UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD E. TICE,
SANDRA TICE,

       Plaintiffs,

                                      File No. 1:15-cv-134

v.

                                      HON. ROBERT HOLMES BELL

ZIMMER HOLDINGS, INC. et al.,

       Defendants.

_____/

## **O P I N I O N**

This is an action brought by Plaintiff Richard E. Tice and his wife, Sandra Tice, against Zimmer Holdings, Inc. and its subsidiaries Zimmer, Inc. and Zimmer US, Inc. (collectively, "Zimmer"). Plaintiffs claim that Mr. Tice was injured by Zimmer's product, a hip implant containing components known as the "Zimmer Trilogy Acetabular System Longevity Crosslinked Polyethylene Liner, Zimmer Versys Hip System Femoral Stem, and Zimmer Versys Hip System Femoral Head" (collectively, the "Devices"). (Am. Compl. ¶ 1, ECF No. 17.) On July 15, 2015, the Court issued an opinion and order partially granting Zimmer's motion to dismiss. The fraud and negligent misrepresentation claims in Count V were dismissed for failure to meet the pleading requirements in Rule 9 of the Federal Rules of Civil Procedure, but the Court gave Plaintiffs an opportunity to file an amended complaint. Before the Court is Zimmer's motion to dismiss Counts I and V of the amended complaint

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Zimmer asserts that the claim in Count I is based on a theory of strict liability which is not recognized in Michigan. Zimmer also contends that the amended claim in Count V fails to state a claim of fraud or negligent misrepresentation. Zimmer also seeks dismissal of the loss-of-consortium claim in Count VI, to the extent that it is derivative of Counts I and V. The motion will be granted in part and denied in part.

## I.

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The Court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*,

550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## II.

### A. Count I: Strict Liability

Zimmer contends that Count I of the amended complaint should be dismissed because it relies on a theory of strict liability, which is not recognized in Michigan. "In Michigan, two theories of recovery are recognized in product liability cases; negligence and implied warranty. Strict liability has not been recognized as a third theory of recovery." *Johnson v. Chrysler Corp.*, 254 N.W.2d 569, 571 (Mich. Ct. App. 1977); *see also Rodger v. Ford Motor Co.*, No. 275578, 2008 WL 4646140, at *6 (Mich. Ct. App. Oct. 21, 2008) ("Michigan does not recognize strict liability as a theory of recovery in product liability actions.").

Count I alleges that Zimmer is liable for Mr. Tice's injuries because the Devices "were designed, manufactured, promoted, distributed, marketed, and sold by the Defendants in a defective and unreasonably dangerous condition at the time they were placed in the stream of commerce." (Am. Compl. ¶ 30, ECF No. 17.) In particular, Plaintiffs allege that the Devices contained manufacturing defects and design defects, the Devices were not adequately tested, they were not accompanied by adequate instructions or warnings regarding the risks associated with their use, and Defendants failed to provide adequate warnings about known failures and defects. (*Id.*) Count I further alleges that Zimmer knew of the dangers

3

and defects in the Devices but it continued to sell them, that a "practical and technically feasible alternative production practice" was available to Zimmer, and that Zimmer knew or should have known of the manufacturing defects and the risk of injury associated with the Devices.

In contrast, Count II asserts that Zimmer owed Mr. Tice a duty of reasonable care to provide a safe product, and that Zimmer breached this duty of care by "defectively designing, manufacturing, and/or negligently failing to warn of these defects in the Devices[.]" (*Id.* at ¶ 42.) In addition, Count III asserts that Zimmer "impliedly warranted that the Devices . . . were merchantable, fit and safe for [their] ordinary and intended use." (*Id.* at ¶ 45.)

Based on the foregoing, it appears that Counts II and III are expressly based on theories of negligence and implied warranty, respectively, which are the only two theories of recovery recognized in Michigan for a product liability claim. *Johnson*, 254 N.W.2d at 571. Thus, the Court agrees with Zimmer that, to the extent that Count I relies on a different theory (i.e. strict liability), it does not state a claim.

On the other hand, Plaintiffs assert that Count I does not "sound" in strict liability and that it "contains the elements required by the statute governing product liability cases such as this one." (Pls.' Resp. to Mot. to Dismiss 3, ECF No. 22.) Plaintiffs cite Mich. Comp. Laws § 600.2946(2), which provides:

> In a product liability action brought against a manufacturer or seller for harm allegedly caused by a production defect, the manufacturer or seller is not liable unless the plaintiff establishes that the product was not reasonably safe at the time the specific unit of the product left the control of the manufacturer or

> seller and that, according to generally accepted production practices at the time the specific unit of the product left the control of the manufacturer or seller, a practical and technically feasible alternative production practice was available that would have prevented the harm without significantly impairing the usefulness or desirability of the product to users and without creating equal or greater risk of harm to others.

Mich. Comp. Laws § 600.2946(2). The foregoing statute sets forth certain requirements for a product liability claim against a seller or manufacturer for a production (or design) defect. *See id.* § 600.2945(i) (defining production to include design). Among other things, a plaintiff must show that a "practical and technically feasible alternative production practice was available" that would have prevented the harm. *Id.* § 600.2946(2). In Count I, but not in Counts II or III, Plaintiffs allege that a feasible alternative production practice was available to Zimmer. Thus, Count I contains unique allegations that may be necessary to establish liability on Plaintiffs' product liability claim.

In its prior opinion, the Court characterized Count I as a strict liability claim to distinguish it from Counts II and III. But it does not necessarily follow that, because Counts II and III rely on other theories of liability, Count I relies solely on a theory of strict liability. Indeed, Plaintiffs' contention in Count I that Zimmer designed defective devices could be construed as relying on a theory of negligence, a theory of implied warranty, or both. *See Prentis v. Yale Mfg. Co.*, 365 N.W.2d 176, 187 (Mich. 1984) (noting that in defective design cases, "the standards of liability under the theories of implied warranty and negligence [are] indistinguishable"). Although Count I appears to be duplicative of Counts II and III in many respects, the Court will not dismiss it for failure to state a claim at this stage of the

5

proceedings. Instead, the Court will make clear that Plaintiffs may obtain relief on their product liability claims only under a theory of negligence or implied warranty. To the extent that Count I relies on another theory of liability, such as strict liability, it does not state a claim.

### B. Count V:  Fraud/Negligent Misrepresentation

Plaintiffs claim that Zimmer is liable for negligent misrepresentation because it had "actual knowledge of serious risks and danger" associated with the use of the Devices, but it failed to disclose these risks when it had a duty to do so. (Am. Compl. ¶ 57.) Specifically, Plaintiffs refer to a recall notice for the Versys Hip System femoral stem, which indicates that the "femoral heads will not seat onto the taper of the hip stem[.]" (Ex. 1 to Am. Compl., ECF No. 17-1.)

Plaintiffs also allege that Zimmer willfully or negligently supplied false information to Plaintiffs and the public about the safety, quality, and effectiveness of the Devices, and that Mr. Tice and his physician relied on this information to purchase and use them. Plaintiffs refer to statements in pamphlets for "Zimmer's Total Revision Ability," including statements in the following exhibits to the amended complaint:

Exhibit 2:

Through our skilled hands and because of the innovative solutions you can create in response to each situation, patient quality of life is enhanced and restored. Zimmer makes your innovative solutions possible with products designed in partnership with you and in collaboration with the world's finest surgeons and top designers. Because of our dedication to developing and producing the <u>highest-quality</u> orthopaedic products, you can repair, replace,

6

and regenerate with confidence. To be the best and to respond to every unique need. You make that pledge to each patient. We make that pledge to you.

Exhibit 3:

You're committed to helping patients return to active lives, and Zimmer is committed to bringing you our best products and techniques to make this happen.

Exhibit 4:

Created by the world's finest surgeons and designers, Zimmer's hip revision products offer complete solutions for needs, expected or unexpected.

Exhibit 5:

Zimmer acetabular liners provide configurations that address joint reconstruction and stability. Longevity *Highly Crosslinked Polyethylene Liners* provide for true alternative bearing solutions.

Exhibit 6:

Construction. Supporting solutions – From greater trochanteric to pelvic and femoral reconstruction. Zimmer has the solutions to support complex hip revision surgery.

(Am. Compl. 11-12, ECF No. 17.)

Plaintiffs also cite statements about the "Trilogy Acetabular System" from an archived version of Zimmer's website.

Exhibit 7:

. . . *Zimmer has a documented history of more than 20 years of clinical success with compression-molded polyethylene.* . . . It addresses the five key factors that impact polyethylene performance: material, processing, design, sterilization, and packaging.

. . . Modular liners are designed to minimize wear by achieving maximum

> congruency and optimum polyethylene thickness without compromising range of motion and metal shell thickness.
>
> Proven design features. Supported by long-term clinical experience. (1) propriety locking mechanism helps prevent dislocation of the liner from the shell, yet provides easy disassembly, if necessary. (2) Full congruency between the liner and shell inhibits micromotion as the liner maintains integrity under load and stress. (3) Anti-rotational tabs secure the liner firmly in place. (4) Bottoming-out feature prevents rim loading and helps to distribute stresses evenly by ensuring uniform metal shell support of the polyethylene liner. (5) Polar boss minimizes transverse forces and helps prevent micromotion by providing an additional stabilization point.
>
> Results of long-term clinic studies show that Zimmer fiber metal cups achieved extremely high success rates in the acetabulum. A review of 14 studies revealed a success rate of over 98 percent when considering failure of any kind, including radiographic loosening. . . . *Trilogy* Shells continue to utilize this <u>extremely well-performing</u> ingrowth material.

(*Id.* at 13-14.)

In addition, Plaintiffs refer to statements in an article from an archived version of Zimmer's website from the fall of 2003.

> <u>Exhibit 8</u>:
>
> Improvements are continually being made in materials used for hip replacements. For instance:
>
> - Polyethylene durability has been improved through 'crosslinking.'
>
> - Highly crosslinked polyethylene, advancement in this material, is highly wear-resistant.
>
> - Today's ceramic implants generally resist chipping and breaking better than the early versions.
>
> - Second generation metal-on-metal products are designed to address loosening that sometimes occurred in first generation metal-on-metal.

> Clinical studies have shown that, generally, the higher the level of crosslinking, the greater the improvement in wear resistance. Zimmer's highly crosslinked polyethylene is produced using harmless high-dose electron beam radiation, which further links together the molecular structure of the polyethylene. Laboratory testing has shown that in crosslinking, a new three-dimensional structure is created that results in a polymer more resistant to wear.

(*Id.* at 14-15.)

Also, Plaintiffs refer to statements in an another article from an archived version of Zimmer's website from the fall of 2004.

> Exhibit 9:
>
> Hip Replacement Considerations - Stability
>
> Zimmer hip implant designs are the result of detailed analyses of hundreds of patients x-rays for maximum stability and optimal bone/implant fit. The goal is to maximize the patient's range of motion while at the same time minimizing the possibility for dislocation.

(*Id.* at 15.)

In addition, Zimmer allegedly made the following statements from an archived article on Zimmer's website dated 2004:

> Exhibit 10:
>
> Metasul® - The Strength of Metal-on-Metal
>
> In the Metasul implant, the conventional plastic polyethylene insert [has a] cobalt-chrome, metal inlay. This helps minimize wear over time, potentially increasing the longevity of the implant. . . . Metasul offers the promise of greater longevity than traditional hip implants.

(*Id.*)

Also, Plaintiffs cite these statements from a version of Zimmer's website archived in 2010:

Exhibit 11:

Hip Products Zimmer – By collaborating with innovating hip surgeons worldwide, Zimmer strives to improve patient quality of life with Zimmer® Minimally Invasive Solutions Procedures and leading-edge implant technology that continually raise the standard of care and give surgeons confidence they're providing the best patient solutions.

(*Id.* at 15-16.)

Finally, Plaintiffs quote a caption from Zimmer's website, a copy of which is attached in Exhibit 12: "Enhancing quality of life for patients worldwide." (*Id.* at 16.)

Zimmer contends that the aforementioned statements do not state a claim for fraud or negligent misrepresentation because they amount to puffery, or they are irrelevant to the Devices or to Mr. Tice's decision to use them. Zimmer also contends that Plaintiffs' allegations fail to satisfy the pleading requirements in Rule 9(b) of the Federal Rules of Civil Procedure. *See Smith v. Bank of Am. Corp*, 485 F. App'x 749, 752 (6th Cir. 2012) (requiring claims of fraud and negligent misrepresentation under Michigan law to be pleaded with particularity in accordance with Fed. R. Civ. P. 9(b), where both claims rely on the same course of conduct).

In Michigan, claims of fraud and negligent misrepresentation both require a showing that the defendant made a statement with the knowledge or intention that the plaintiff would rely on it, and that the statement was false when made. *See Hi–Way Motor Co. v. Int'l*

10

*Harvester Co.*, 247 N.W.2d 813, 816 (Mich. 1976) (elements for fraud); *Law Offices of Lawrence J. Stockler, P.C. v. Rose*, 436 N.W.2d 70, 82 (Mich. Ct. App. 1989) (elements for negligent misrepresentation). The expression of an opinion, or "puffing," is not actionable as fraud. *Van Tassel v. McDonald Corp.*, 407 N.W.2d 6, 8 (Mich. Ct. App. 1987). Puffing is "a salesman's praise of his own property, involving matters of estimate or judgment upon which reasonable men may differ." *Hayes Constr. Co. v. Silverthorn*, 72 N.W.2d 190, 192 (Mich. 1955). "[I]t is within normal expectations of commercial dealing for salesmen to 'hype' their products beyond objective proof." *Van Tassel*, 407 N.W.2d at 8. "An action for fraudulent misrepresentation must be predicated on a statement relating to a past or an existing fact." *Eerdmans v. Maki*, 573 N.W.2d 329, 333 (Mich. Ct. App. 1997). "Future promises are contractual and do not constitute fraud." *Hi-Way Motor Co.*, 247 N.W.2d at 816; *accord Forge v. Smith*, 580 N.W.2d 876, 884 (Mich. 1998) (negligent misrepresentation).

The Court agrees with Zimmer that Plaintiffs' allegations do not state a claim because the allegedly false statements described in the complaint appear to be either irrelevant to the Devices or not actionable because they amount to puffing or statements about future performance.

<u>Exhibit 1</u>

Exhibit 1 contains information indicating that a particular size of femoral head of a Versys implant was recalled because the head will not seat properly on the femoral stem.

Plaintiffs ostensibly claim that Zimmer was aware of this defect and should have disclosed it; however, Plaintiffs' complaint contains no allegations from which to infer that Mr. Tice's implant was subject to the recall or that the failure of his implant was in any way related to an inability of the femoral head to sit on the stem.  Instead, the claimed defect in the Devices is that they failed due to "corrosion and deterioration . . . *after a period of time following implanting* that caused friction resulting in metal-on-metal contact."  (Am. Compl. ¶ 57 (emphasis added).)  Consequently, Plaintiffs' reliance on Exhibit 1 is not sufficient to state a plausible claim.

As for the statements in Exhibits 2 through 12, the Court agrees that these statements fail to satisfy the pleading requirements of Rule 9(b) because none of Plaintiffs' allegations explain why they are false.  *See Smith*, 485 F. App'x at 752 (requiring that the allegations "explain why the statements were fraudulent").  Plaintiffs contend that the Court should not apply the heightened pleading requirements of Rule 9(b) because those requirements are flexible and are to be read in accordance with the purpose of the Rules, which is to provide notice of the plaintiff's claims sufficient to prepare a defense.  *See U.S. ex rel. Folliard v. CDW Tech. Servs., Inc.*, 722 F. Supp. 2d 20, 25 (D.D.C. 2010).  Plaintiffs contend that this is not the sort of case where heightened pleading requirements need to be applied because Defendants have defended many identical claims across the country and the nature of these claims has been known to them for many years.

Plaintiffs provide no factual support for their contention that Defendants have defended similar claims, and no legal support for their contention that the requirements for pleading a claim can be satisfied by allegations raised in a different case. Moreover, Plaintiffs' allegations do not provide adequate notice of the allegedly false statements that Plaintiffs or their physicians relied upon when choosing to purchase and implant the Devices. Plaintiffs have provided a list of publicly-disseminated statements without facts indicating that any of the statements were actually relied upon by Plaintiffs or their physicians. Moreover, without allegations indicating why any of these statements were false, it is not clear how Zimmer could be expected to respond to Plaintiffs' allegations. Thus, Plaintiffs' argument for not applying pleading requirements of Rule 9(b) is not persuasive.

Even assuming that Plaintiffs' allegations satisfy Rule 9, the statements in Exhibits 2 through 12 do not give rise to a claim because they are irrelevant or are not actionable under state law.

Exhibits 2-6

The statements in Exhibits 2 to 6, which refer to Zimmer's "highest quality" products, Zimmer's commitment to providing the "best" products created by the "finest" designers, and the fact that Zimmer "has solutions" to address hip revision and "configurations" to address "stability," amount to puffing. *Cf. Hayes Constr. Co.*, 72 N.W.2d at 192 (holding that defendant's assertions as to the merits of a Coleman furnace, "that it would do the job, that it was miserly in its consumption of fuel, and the maintenance nil" were puffing).

Exhibit 7

Exhibit 7 concerns Zimmer's design of the acetabular liner, which sits between the ball of the hip joint and the shell or cup. (*See* Exs. 7, 8 to Am. Compl., ECF Nos. 17-7, 17-8.) The statements in this exhibit are also puffing. Even assuming that the alleged defect in the Devices is related to the acetabular liner, such a defect would not render false Zimmer's vague assertions that it "designed" its devices to minimize wear and prevent dislocation of the liner, or that it had achieved "success" with a polyethylene liner.

Exhibit 8

Exhibit 8 provides general statements about "improvements" in Zimmer's products and the fact that its polyethylene liner is "highly wear-resistant." There is no basis on which a fact-finder could find that such statements are false. Assuming that Mr. Tice's implant prematurely failed as a result of wear and tear in the liner (which Plaintiffs have not specifically alleged), that fact alone would not render false Zimmer's assertion that its polyethylene material is "wear resistant."

Exhibit 9

Exhibit 9 provides a general statement about the stability of the Devices and Zimmer's goal to maximize the patient's range of motion. Zimmer's goals are not at issue in this case, and there is no allegation that the defect experienced by Mr. Tice is at all related to the stability of the Devices.

Exhibit 10

Exhibit 10 concerns the properties of the metal-on-metal Metasul system. Plaintiffs do not indicate how Zimmer's statements about this system has any relevance to Plaintiff's implant, which ostensibly used a polyethylene liner between metal components.

Exhibits 11, 12

Exhibits 11 and 12 provide general statements about Zimmer's intent to improve patient quality of life and its "leading-edge" implant technology. These are further examples of puffing that are not actionable as misrepresentations of fact.

For all the foregoing reasons, therefore, Count V will be dismissed for failure to state a claim.

**C. Count VI: Loss of Consortium**

Zimmer seeks dismissal of Mr. Tice's claim for loss of consortium to the extent that it relies upon the theory of strict liability in Count I and the fraud claim in Count V. Such a request is not necessary. The loss-of-consortium claim is necessarily contingent upon, and limited by, Mr. Tice's ability to recover for his injuries. Several claims regarding those injuries are still pending. If Mr. Tice cannot recover under those other claims, then the loss-of-consortium claim will fail as a matter of law. Otherwise, Count VI will remain viable. Zimmer need not seek partial dismissal of the loss-of-consortium claim whenever some, but not all, of Mr. Tice's claims are resolved against him.

### III.

In summary, Count I will be dismissed to the extent that it relies on a theory of strict liability.  Count V will be dismissed for failure to state a claim.  An order will be entered that is consistent with this Opinion.


Dated: <u>October 30, 2015</u>                            /s/ Robert Holmes Bell
                                                          ROBERT HOLMES BELL
                                                          UNITED STATES DISTRICT JUDGE